**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Steven and Jennifer Halliday,

        Plaintiffs,

    v.

Beneficial Financial I, Inc.,

        Defendant.

Case No. 2:12-cv-708

Judge Graham

Magistrate Judge Deavers

OPINION AND ORDER

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, to stay pending arbitration (doc. 7). Defendant seeks enforcement of an arbitration rider signed by the parties at the closing of the plaintiffs' mortgage. For the reasons set forth below, the motion to stay pending arbitration is granted.

**I.    Factual Background**

Plaintiffs Steven and Jennifer Halliday bring this action alleging that the mortgage contract that they executed with defendant Beneficial Financial I, Inc., (Beneficial) is unconscionable and that the defendant mortgage company violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*, and the Ohio Consumer Sales Practices Act (CSPA), Ohio Rev. Code § 1345.01, *et seq*.

This action arises from the refinancing of plaintiffs' home. Plaintiffs initially went to a local branch of defendant Beneficial seeking to obtain a personal loan. Doc. 1 ¶ 16. After Beneficial told the plaintiffs that they could refinance their existing mortgage at a lower rate, the plaintiffs, on May 15, 2006, signed a loan refinance agreement and mortgage. Doc. 1 ¶¶ 14, 19. Plaintiffs subsequently became dissatisfied with their new loan after discovering that its initial interest rate was higher than

the rate on their previous mortgage, and that the refinance had resulted in higher monthly payments and a higher principal. Doc. 1 ¶¶ 26, 32.

In January of 2007, plaintiffs began to have trouble making their monthly loan payments. Doc. 1 ¶ 40. In response to plaintiffs' request, Beneficial temporarily reduced the interest rate on plaintiffs' loan, resulting in a monthly payment reduction of $85.40, from $1,311.87 to $1,226.47. Doc. 1 ¶ 42. Despite this reduction, plaintiffs fell behind on their loan. Yet, "[d]espite Plaintiffs' difficulties making payments due to the unconscionable terms of their Loan, Plaintiffs have diligently tried to work with Defendant to make payments on their Loan to become current. For the entire year in 2011, Plaintiffs made payments of $1,445.00 each month to try and catch up on their Loan, plus they made payments of $400 in addition to that amount from July through December of 2011, but they were never able to make any progress bringing their Loan current due to the interest rate on their loan and various fees, advances, and charges to their account." Doc. 1 ¶¶ 49-55 (emphasis omitted). In addition to their allegation that the terms of the loan were unfavorable, plaintiffs allege that "Defendant has charged Plaintiffs unauthorized fees and advances and has charged Plaintiffs' account commercially unreasonable amounts for lender placed hazard insurance." Doc. 1 ¶ 47.

In March, 2012, plaintiffs' counsel sought to obtain information about plaintiffs' loan and submitted to Beneficial a request for loan documents. Doc. 1 ¶ 53. Plaintiffs allege that under RESPA, defendant was required to respond to that request within 20 days, but did not. Doc. 1 ¶ 54; see also 12 U.S.C. § 2605(e)(1)(B). Plaintiffs submitted a second request on May 23, 2012. Doc. 1 ¶ 56. Defendant responded on June 4. Doc. 1 ¶ 57. On July 13, 2012, "Defendant sent Plaintiffs a letter titled 'Notice of Right to Cure Default' which set forth Defendant's intent to declare the loan

payable immediately if $8,362.91 was not paid by August 12, 2012.  Plaintiffs' unpaid principal balance as of that date was $115,916.81." Doc. 1 ¶ 58.  Plaintiffs subsequently filed this action.

Defendants seek dismissal or stay of the case based on an arbitration rider that the parties signed at the closing of the plaintiffs' loan.  Doc. 7.  The arbitration rider purports to require arbitration for a large range of disputes:

> This Arbitration Rider is signed as part of Your Agreement with Lender and is made a part of that Agreement.  By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future), including initial claims, counter-claims, cross-claims, and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed.

Doc. 7-2 at 1.  The arbitration rider further sets forth a detailed scheme for how arbitration will be financed:

> If Lender files a Claim, Lender shall pay all the filing costs.  If you file a Claim, filing costs and administrative fees, (other than hearing fees) shall be paid as follows: (a) you agree to pay for the initial cost of filing the claim up to the maximum amount of $100.00; and (b) if required by the arbitration administrator's rules, we will pay for filing costs over $100.00 and for any administrative fees charged by the arbitration administrator on any Claim submitted by you up to a maximum of the amount of the filing costs and administrative fees that would be charged by the arbitration administrator for a Claim equal to your loan amount.  Any filing costs and/or administrative fees assessed for a Claim in excess of your loan amount shall be paid by you.  The lender shall pay the cost of one full day of arbitration hearings.  Fees for hearings that exceed one day will be paid by the requesting party.

Doc. 7-2 at 1.  Plaintiffs oppose the motion and present several arguments that this Court should not give effect to the arbitration clause of the contract.

**II.     Standard of Review**

3

The Federal Arbitration Act establishes the enforceability of agreements to arbitrate disputes: "A written provision in any . . . contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the Arbitration Act, the Court, upon finding "any issue referable to arbitration under an agreement in writing for such arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. For this reason, the Court considers the defendant's motion as one to stay, not to dismiss. When an action is brought on an issue covered by an arbitration clause, this Court may stay proceedings "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ." 9 U.S.C. § 3. "[A] district court's consideration of a motion to compel arbitration is limited to determining whether the parties entered into a valid agreement to arbitrate, and does not reach the merits of the parties' claims." Burden v. Check Into Cash of Kentucky, LLC, 267 F.3d 483, 487 (6th Cir. 2001) (citing Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

**III.    Analysis**

Defendant argues that this action must be dismissed or stayed because the dispute falls within

the scope of the arbitration rider signed by the parties. Doc. 7. In response, plaintiffs present two arguments that the Court should not stay the case and direct the parties to arbitrate the dispute: 1) Because the contract, specifically the arbitration rider, is unconscionable and should not be enforced; and 2) because the defendant has forfeited its right to effectuate the arbitration rider by acting inconsistently with that contract term.

a. Unconscionability

Under the Arbitration Act, arbitration contracts may be invalidated by unconscionability and other state-law defenses to contract. Rent-A-Center, West v. Jackson, 130 S.Ct. 2772, 2776 (2010). Under Ohio Law, "[u]nconscionability includes both an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. . . . The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionably." Taylor Bldg. Corp. of Am. v. Benfield, 884 N.E.2d 12, 20 (Ohio 2008) (internal quotations and citations omitted). Procedural unconscionability focuses on the circumstances surrounding the formation of the contract, "such as the parties' age, education, intelligence, business acumen and experience," among others. Hayes v. Oakridge Home, 908 N.E.2d 408, 413 (Ohio 2009) (internal quotations omitted). The basic question of procedural unconscionability is whether a voluntary meeting of the minds occurred. See Scovill v. WSYX/ABC, 425 F.3d 1012, 1017 (6th Cir. 2005) (quoting Jeffrey Mining Prods., L.P. v. Left Fork Mining Co., 758 N.E.2d 1173, 1181 (Ohio App. 2001)). Substantive unconscionability concerns the commercial reasonableness of the terms of the contract. "Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to

5

accurately predict the extent of future liability." Hayes, 908 N.E.2d at 414.

Plaintiffs argue that three separate aspects of their contract with defendant are unconscionable: the substance of the contract refinancing their home, the arbitration clause generally, and the "delegation clause" that purports make arbitrable "initial claims . . . arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration." Doc. 7-2 at 1. In this motion to stay the case pending arbitration, the Court considers only the arbitration and delegation clauses–the substance and terms of the refinance transaction are not relevant to whether arbitration is necessary. Rent-A-Center, 130 S.Ct. at 2778 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). Here, as in Rent-A-Center, the arbitration agreement covers both the substance of the underlying contract and threshold issues regarding the scope and validity of the arbitration agreement. "The delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id. at 2777. Here, the Court must first decide whether the delegation provision, delegating threshold issues to the arbitrator, is unconscionable. Because the Court concludes that the delegation provision is not unconscionable, the threshold issue of whether the remainder of the arbitration clause is unconscionable is a matter for arbitration.

Plaintiffs present a number of arguments that the delegation clause is procedurally and substantively unconscionable. Because both procedural and substantive unconscionability are necessary to invalidate the delegation clause, the Court may examine either type of unconscionability

first.  See Taylor Bldg. Corp., 884 N.E.2d at 20.  Plaintiffs argue that the delegation clause is substantively unconscionable for two reasons: First, because "[i]t effectively precludes any judicial gatekeeping and leads to an illogical result that an arbitrator makes the determination of whether arbitration is even warranted in the first place."  Doc. 8 at 11.  Following Rent-A-Center this is not a problem.  In that case, the Supreme Court specifically held that parties to a contract could agree to have an arbitrator determine threshold issues, including whether other issues are arbitrable.  See 130 S.Ct. at 2777-78.  Effectuating an agreement to arbitrate threshold issues regarding arbitration promotes the purpose of the Arbitration Act and is not unconscionable.

Next, plaintiffs argue that the delegation clause "is unfair because of the financial burden of having an arbitrator decide the initial questions of arbitrability."  Doc. 8 at 11-12.  Plaintiffs argue that the delegation clause is financially burdensome for four reasons:

First, plaintiffs argue that "the costs of making the initial determination are not disclosed as a part of the delegation clause, nor does the Arbitration Rider discuss how they will be apportioned."  Doc. 8 at 11.  This is not entirely accurate.  The arbitration rider is clear that "[t]he lender shall pay the cost of one full day of arbitration hearings.  Fees for hearings that exceed one day will be paid by the requesting party."  Doc. 7-2 at 1.  Under the rider, the defendants pay the cost of the arbitration of all issues, including the threshold issues of whether the underlying claim is arbitrable, that can be determined within one day of arbitration. The speculative possibility that threshold issues may require more than one day of arbitration, and that plaintiffs may be forced to spend some uncertain amount of money to continue arbitration does not render the delegation clause unconscionable.

Second, plaintiffs argue that the delegation clause is unconscionable because "Beneficial is

only required to pay filing fees over $100 'if required by the arbitration [administrator's] rules.'" Doc. 8 at 12. This is true, but misleading. The arbitration rider sets up a plan by which the filing fees paid by plaintiffs for a claim in which they seek an amount not exceeding their loan amount are limited to $100. No matter what the filing fee, the rider limits plaintiffs' filing payment to that amount. It is true that the defendant may not have to pay any fees, and only will when required to do so by the arbitration administrator. But if any fees beyond $100 are to be paid, the rider is clear that they are to be paid by defendant, not plaintiff. See doc. 7-2 at 1 ("[Y]ou agree to pay for the initial cost of filing the Claim up to the maximum amount of $100 . . . ."). This *limitation* on the fees to be paid by plaintiffs is not unconscionable. To the contrary, when compared to this Court's filing fee of $350.00 to file a civil complaint, the limitation on the arbitration filing fees to be paid by plaintiffs seems quite reasonable.

Third, plaintiffs argue that they "are required to pay for [filing] costs and administrative costs in excess of the loan amount." Doc. 8 at 12. As an initial matter, this assertion does not seem quite right–it would be astounding if any arbitration firm charged the plaintiffs filing and administrative costs in excess of their six figure loan. The arbitration rider does not anticipate such a result. Instead, the language identified by the plaintiffs limits the filing fees to be paid by the defendant: "[I]f required by the arbitration administrator's rules, we will pay for filing costs over $100.00 and for any administrative fees charged by the arbitration administrator on any Claim submitted by you up to a maximum of the amount of the filing costs and administrative fees that would be charged by the arbitration administrator for a Claim equal to your loan amount. Any filing costs and/or administrative fees assessed for a Claim in excess of your loan amount shall be paid by you." Doc. 7-2 at 1. In other words, as long as the plaintiffs seek to recover less than their loan amount,

8

defendant shall pay all of the filing fees and administrative costs that exceed $100. Plaintiffs' complaint does not specify a dollar amount that they seek. While it is possible that more than the loan amount is in dispute, the method in which the arbitration rider allocates filing and administrative fees is not unconscionable. To the contrary, both sides are likely to bear some portion of such fees, and requiring the plaintiffs to bear an additional portion of that cost if their claim exceeds the amount of their loan is not unfair.

Fourth and finally, plaintiffs argue that the delegation clause is unconscionable because "Beneficial will only pay for one full day of arbitration proceedings, with the Hallidays being required to cover all fees for hearings exceeding one day." Doc. 8 at 12. This funding scheme could render an arbitration clause unconscionable. Here, however, we consider only whether the delegation clause is unconscionable. One day, paid for by the defendant, is a reasonable amount of time to consider threshold issues. The Court does not here consider the conscionability of the arbitration clause itself, only the delegation clause. The fairness of allocating costs so that defendants pay for only one day of arbitration may be relevant to whether the arbitration clause itself is unconscionable, an issue the Court must leave for the arbitrator.

Given that the delegation clause is not substantively unconscionable, it is unnecessary to consider plaintiffs' argument that it is procedurally unconscionable.

<u>b. Forfeiture of Defendant's Right to Invoke the Arbitration Rider</u>

Plaintiffs argue that this Court should not enforce the arbitration rider because defendant has forfeited its right to rely on the rider by acting inconsistently with it. "Beneficial waived any purported right to arbitration when it failed to provide the Arbitration Rider to the Hallidays, despite their request for a complete copy of the loan closing documents as a part of their qualified written

9

request ('QWR')." Doc. 8 at 6.

A party seeking to assert a contract right, including one found in an arbitration clause, may forfeit that right by "(1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" Hurley v. Deutsche Bank Trust Co. Americas, 610 F.3d 334, 338 (6th Cir. 2010) (quoting O.J. Distrib., Inc. v. Hornell Brewing Co., 340 F.3d 345, 356 (6th Cir. 2003)). "Because of the presumption in favor of arbitration under the Federal Arbitration Act, we will not lightly infer a party's waiver of its right to arbitration." Id. Here, plaintiffs identify one action that defendant has taken that they argue is inconsistent with reliance on the arbitration rider–defendant declined to include a copy of the rider in its response to plaintiffs' request for documents. Doc. 8 at 6. Defendant's alleged failure to include the rider in the documents with which they provided plaintiffs is a missed opportunity for the defendant to assert its arbitration right, but it is not an action completely inconsistent with that right. Nor is it clear that the plaintiffs suffered prejudice as a result of defendant's failure to include the rider. The documents that they did provide to plaintiffs refer to the arbitration rider in two places. Doc. 8-1 at 8, 13. These references are sufficient to put plaintiffs on notice of the arbitration rider that they signed and preclude the conclusion that by omitting the arbitration rider, defendant's actions were "completely inconsistent with any reliance on an arbitration agreement." Hurley, 610 F.3d at 338.

**V.      Conclusion**

Under this Court's review, the delegation clause is not unconscionable and the defendant has not forfeited its ability to invoke the arbitration rider. The Court here decides only that an arbitrator may decide threshold issues as anticipated by the delegation clause of the arbitration rider. As

required by Rent-A-Center v. Jackson, the Court defers to arbitration the issues, raised by plaintiffs, of whether the arbitration rider itself is unconscionable and whether it should be given effect.  Here, the Court enforces only the delegation clause.

      Based on the foregoing reasons, the defendant's motion to stay pending arbitration (doc. 7) is GRANTED.

      IT IS SO ORDERED.


                                                 S/ James L Graham
                                                 James L. Graham
                                                 UNITED STATES DISTRICT JUDGE

Date: February 26, 2013